**UNITED STATES of America**

v.

**William R. MATTISON.**

No. 3–89–00026.

United States District Court, M.D. Tennessee, Nashville Division.

Feb. 1, 1990.

Robert Watson, Asst. U.S. Atty., Nashville, Tenn., for plaintiff.

Sumpter Camp, Federal Public Defender, Nashville, Tenn., for defendant.

### MEMORANDUM

HIGGINS, District Judge.

This matter is before the Court on the defendant's motion (filed January 11, 1990; Docket Entry No. 38) that this Court recuse itself under the provisions of 28 U.S.C. § 455.

It is alleged that some time prior to February 1, 1989, the defendant filed a petition with the United States District

Court for the Middle District of Tennessee. The form of the petition, and the nature of the relief sought, are of little consequence for the present motion. More important is that on February 1, 1989, the defendant is alleged to have caused a statement to be mailed from Sarasota, Florida, to the United States District Court in Nashville, where it arrived on February 6, 1989.

The substance of the alleged statement is as follows:

> Over thirty years ago, upon entering into military service to the People of the United States, I took an oath to defend the Constitution [of the People] of the United States. If these issues are not addressed by this Court I intend KILL [sic] any agent of the government, including any United States Judge, who orders the violation of my right. I would consider KILLING a person who violates my rights an act in fulfillment of my sacred oath. In the absence of action by the United States Congress to remove, by impeachment, those tyrants who violate provisions of the Constitution [of the People] of the United States, it becomes the duty of the People to eliminate them. I shall utilize whatever weapons are at my disposal to eliminate enemies of the People of the United States, especially those who purport themselves [sic] to be exempt from obeying our Constitution. No agent of the Government is exempt from the restrictions of our Mandate. Like those who established this nation on July 4, 1776, I consider it my sacred duty to resist oppression.... If this Court fails to consider and address all of the grievances raised in this petition then this Court is guilty of the very type of tyranny which the Courts were established to prevent.... If this Court believes that the rules of procedure or their power supercede [sic] my Constitutional right to have my grievances addressed, it is my intent to KILL the tyrant. I take with a deadly serious resolve my oath to defend the Constitution [of the People] of the United States. Violate our mandate at your own peril. No one, not even the officers of this Court are exempt from the provisions of our mandate. My sa-cred oath compels me to take whatever action I must to 'defend the Constitution [of the People] of the United States'.... I, THEREFORE, declare my intent to resist, by whatever means are available to me, including killing their members, their attempts to plunder my property and enslave me.

Mr. Mattison was indicted by a grand jury for mailing a threatening communication, in violation of 18 U.S.C. § 876.

The defendant argues that this Court must recuse itself under the well-known standards of 28 U.S.C. § 455, on the theory that since this Court has been the object of a threat from the defendant, it could not preside over his trial without creating at least the appearance of partiality.

This is an argument that proves too much. If it were taken at face value, the defendant could not be tried for this offense at all. The threats contained in the message he is alleged to have mailed are not judge-specific or even district-specific. The plain tenor of the document is that *any* government official will risk incurring the defendant's wrath, should he or she fail to dispose of Mr. Mattison's business to the latter's entire satisfaction.

The problem cannot be solved by a change of venue, or by importing a judge from some other district. If Mr. Mattison is the author of the document in question, he is plainly not a man to be bothered by such details.

In the landmark case of *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920), the Supreme Court confronted the question of whether Congress had the authority to levy a tax on the personal income of federal judges, including their salaries. Since every member of the Court received such a salary, it was obvious that their impartiality could reasonably be questioned. Yet the Supreme Court held that it could not decline its jurisdiction. Since every other federal judge was open to the same objection, a rule of necessity was looked upon as forbidding recusal. *Evans*, 253 U.S. at 248, 40 S.Ct. at 551, 40 S.Ct. at 551.

It is similar with the statute appealed to in the present case.

> [T]he principles incorporated in ... § 455 contemplate the ordinary situation in which if a judge is disqualified, he may be replaced by one who is not disqualified. Those principles can hardly be considered applicable to a situation in which a plaintiff has deliberately chosen to adopt a course ... which might disqualify every federal judge in the country.

*Pilla v. American Bar Ass'n*, 542 F.2d 56, 58 (8th Cir.1976).

In short, a rule which would disqualify everybody must be held to disqualify nobody.

For the foregoing reasons, the defendant's motion for recusal is not well taken and is denied.